May it please the Court, John Wood appearing on behalf of Appellant Stephen Shephard. I just have a couple of issues that I would like to address very briefly with the Court, and I think both issues overlay most of the rest of the issues in the case. First of all, I think we made it very clear in our brief that the trial court in this case applied an incorrect evidentiary standard. In a sense, what was a Rule 56 motion in the trial court's order was morphed into more of a 12b-6 hearing than a Rule 56 motion. And that was because of the Court's almost universal application of the allegations in the plaintiff's complaint to the exclusion, to the absolute exclusion, in fact, of the moving party, Officer Shephard's declaration, which his motion was essentially based on. On the same addition, though, aren't you supposed to look at the facts in the light most favorable to the non-moving party? Absolutely. Absolutely. But And aren't there declarations and depositions in the record which support the allegations that the Court relied upon even though citing the verified complaint? As I read through the declarations and the depositions, it seemed as if even though the Court may have used the allegations in the complaint, which were, of course, verified, that there is in the record, there are in the record, declarations and depositions supportive of the allegations in the complaint, and therefore taking the evidence in a view most in line or most supportive of the non-moving party, we would have to review the record, us doing the same kind of thing that the district court did. And though we might not cite the complaint, if we find the evidence in the record, we're there anyway. Your Honor, there is some truth in what the Court has said. But I think in this case, based upon the Court's comments, is the trial court, in the approach that was taken by the trial court, and all I have to go from is the opinion, the Court relied on evidence that was in the complaint. I'll put that in quotes. But was not in the record. And the trial court. On what dispositive issue do you make that statement? In particular, that Officer Shepard ran a license check on Antonio Flores, and it came back clean. There is no evidence in the record of that fact. And the trial court repeated that on at least two occasions in its decision. The thrust of it was that the officer had determined that Mr. Flores was a law-abiding citizen. And that was based upon the ---- A license check doesn't mean he's a law-abiding citizen. It means that he has not had any outstanding warrants on his driver's license. Absolutely. But even if that were so, how does that affect the officer's subsequent actions in detaining the other parties? The ---- And Mr. Flores. Yes. Given that he had a valid driver's license that he presented. Yes. Absolutely. And given that he had receipts for his stuff, and given that he was after him for taking stuff, and he gave him a driver's license, and he gave him receipts and explained why he would be there, that is the substance of Judge Bea's question. And that gets at perhaps one of the most important issues, at least from our view in the case. And that is that the situation at J.C. Penney's, when all this was going on, involved grab-and-run thefts that had existed for a period of time, a period of weeks, before this date, where the evidence in the case showed that people, groups, would come in with cell phones, communicate with drivers outside, and then at the appropriate moment when the coast was clear, I suppose, they would swoop up, close up. That argument says that any family who appears at J.C. Penney and is using a cell phone is subject to being restrained. Because, as I remember the fact, the good officer asked Mr. Sanchez twice, do you want me to arrest these folks? And Sanchez said, no, no. I didn't see him take anything. So now, what was the, if you want, the Terry evidence that allowed the stopping of Flores and his family after he showed, as Judge Smith indicated, receipts for the goods that he had in his possession and a valid driver's license? First of all, Mr. Sanchez, one of his remarks about the arrest was concluded, no, they were part of a group. You mean the Flores family was part of a group because they were a group, they were a family, right? But was there any indication that this group, the Flores group, had been part of any of the grab-and-run groups? No. The information that the officer had was that the, in this case, Mr. Flores and his male companion at the time had been acting suspiciously and were at least suspected by the store of having been involved in the thefts. And they were confronted because they'd been there twice that day. Yes. Which I suppose is a ground to be suspicious. But then they said, because we have to put these pants back in, they're too small for the child or too big for the child, right? So they had an explanation and they had a receipt and they had a bag. And so now I ask you again, what circumstantial evidence, inferences, were there that this group, the Flores group, was in any way more suspicious than the Jones group, the Rubenstein group, or the Hernandez group? First of all, the, in this case, Mr. Flores and his companion had been identified to the officer as having acted not just shopping but suspiciously earlier. And I think that is an important fact. That's what the officer was told at that time. But that only goes to the initial detention. I'm sorry? That only goes to the justifiability of the initial detention. And at the initial detention, there was evidence that they were not the people who had been the shoplifters. And then Officer Shepard went on and did some other things as to which there wasn't any justification with that. There were Hispanics, broken English, and had cell phones. And he detained him while he inquired of the Border Patrol, which is completely unwarranted by the scope of the suspicion to begin with. He was investigating not a simple, what I'll call simple shoplift, where somebody put an article in a bag and was removing it from the store. He was investigating a scenario where, at that moment, potentially, potentially, the fellows were, because code red had been called again, the store thought they were going to get hit again, that vehicles were outside, that they were in cahoots with people in the store with cell phones, in this case. I take a cell phone into the store. I take a cell phone everywhere I go. And I don't carry immigration papers, and sometimes I don't even have my driver's license. Does that mean I would be taken over and detained for that? I don't think so. Well, first of all, we're only talking about a very half-hour total detention involving the whole event. Well, any detention is unreasonable if it's not warranted by reasonable suspicion. Absolutely. But the scope of the detention in this case was the officer was investigating whether a group of people at that moment in time were going to hit the store, not whether the person he was contacting had illegally taken something. May I ask you this, Mr. Wood? What special expertise does a Border Patrol have in grab-and-run exercises at the J.C. Penney store? Well, none that I'm aware of, Your Honor. No. And that's exactly what Mr. Shepard did. He held them until the Border Patrol came. Now, does that sort of indicate that he had a motive other than detention for grab-and-run investigation in detaining them? Well, in this case, they did not have identification, and he was unable to communicate with them. But I'm sorry, Mr. Flores, who is the plaintiff here, had ID. Yes, he did. He had his driver's license, and he had all the receipts, and yet he detained him. And long enough to go find his wife. And then he detained him again, long enough for the Border Patrol to come. And he'd given all of the necessary things that were probable or that were necessary to escape from reasonable suspicion. What reasonable suspicion did he have past what Flores had already given him? What did he need? He had a driver's license. He had receipts. He had explanation. He had a store manager who was saying, Don't arrest. I have no reason to. And he detains. What's his reasonable suspicion to even ask for the Border Patrol to come? He has all the things necessary to even get why even call the Border Control on Mr. Flores. Again, Your Honor, it gets back to the aspect that this involved groups of people hitting the store. And the mere fact that the person that Officer Shepard first spoke with and had a driver's license and the mere fact that he had a receipt for something in the bag did not end Officer Shepard's inquiry because he had to dispel his suspicion. Why call the Border Patrol then? That's the bottom line question. I mean, if he's still after his suspicion on them being the grab and run, the Border Patrol is not the one to call. It seems as if he calls them on something else, and the things he's calling them on Flores does not meet any reasonable suspicion to call. The Officer Shepard's declaration that was filed said that he called the Border Patrol to identify the individuals because they did not have proper identification as well as to confirm their status. They have proper identification as far as J.C. Penny was concerned. They had a matricula consular. That may not be adequate for Border Control, but Border Patrol is not in the shoplifting prevention business either. Pardon me. Yeah, we've gone over the time, and I think it would be a good idea for you to be thinking about settling this case, but that's my personal opinion. Thank you. I would just briefly comment in the interest of saving time unless there's any questions. We appreciate saving time. Okay, that the factual issues show that this isn't probably appropriate for interlocutory appeal in the first place, and even if Mr. Woods' arguments are taken after a trial, I mean that's where these factual issues should have been brought to your attention as opposed to in the interlocutory stage. However, interlocutory appeal, according to Mitchell v. Forsyth, can be brought in these kind of qualified immunity cases, giving you every benefit of the doubt on the facts and then determining them. And that's what we've tried to do in these questionings, haven't we? Giving you every benefit of the doubt and then applying it. And Mitchell v. Forsyth says that it's immediately appealable, and all we have to do is give every benefit of the doubt, your version of the facts to the situation and give you the benefit, and that's why I think it's appealable. Can you answer that? Well, I think that the appealability would be whether or not there was clearly established law that set forth the officer's, whether the officer's actions were proper under Terry, and there hasn't even been any argument that Terry's not clearly established law or that he didn't have some understanding of what the parameters were of a reasonable stop under these circumstances. We're just arguing whether the stop was reasonable, and I think the interlocutory appeal under the case law that I've cited in my brief would be in the situation where the question is purely legal. Was the parameters clearly established? Well, okay. Well, thank you, counsel. Thank you. And Flores v. Shepard will be submitted, and we're going to take up Adami v. County of Orange, and I think we've allotted 10 minutes for Adami, and then we will take up Fuller v. County of Orange. I mean, 10 minutes per side. Could we have a short break? Oh, of course. We're going to go into recess for about 10 minutes while you get set up and allocate your time. So all rise for 10 minutes.
judges: Wardlaw, Bea, Smith